**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TARA ORECHOVESKY, | Civil Action No.: 1:25-cv- 8517 |
| Plaintiff, | |
| - v - | **COMPLAINT** |
| BNY ADMINISTRATIVE SERVICES LLC, | *Jury Trial Demanded* |
| Defendant. | |

Plaintiff Tara Orechovesky ("Orechovesky"), by and through her undersigned attorneys, brings this Complaint against Defendant BNY Administrative Services LLC ("BNY"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for gender discrimination, a hostile work environment, unequal pay, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, as well as whistleblower retaliation in violation of New York Labor Law ("NYLL") § 740.

2. BNY's actions were the culmination of a months-long campaign of retaliation that began after Orechovesky reported pervasive sexual harassment by a male colleague in May 2023, and intensified after she blew the whistle on systemic compliance failures that exposed BNY to significant legal and financial risk in October 2023.

3. Rather than investigate and remedy the misconduct, BNY protected the wrongdoers and targeted the whistleblower, subjecting Orechovesky to a retaliatory hostile work environment, a pretextual performance improvement plan, and ultimately, termination.

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

4. The Court has original jurisdiction over Orechovesky's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

5. The Court has supplemental jurisdiction over Orechovesky's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there, including that Orechovesky's direct supervisor, Jacqueline Doyle, who made the decision to terminate her employment, was located in New York, and that Orechovesky was required to regularly travel to BNY's New York headquarters for work purposes.

7. All conditions precedent to filing the instant action have been fulfilled. On or about January 7, 2024, Orechovesky submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about June 17, 2025, Orechovesky filed a timely Amended Charge of Discrimination. On or about August 8, 2025, the EEOC issued Orechovesky a Notice of Right to Sue, and this action is being brought within 90 days of Orechovesky's receipt of the Notice of Right to Sue.

8. Within 10 days of the commencement of this action, Orechovesky will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## PARTIES

9. Plaintiff Orechovesky is a resident of the State of Pennsylvania and former Senior Vice President of BNY.

10. At all relevant times, Orechovesky was an "employee" of Defendant under all relevant statutes.

11. BNY is a limited liability company registered in Delaware and permitted to do business in New York.

12. BNY employed at least 50 employees throughout Orechovesky's employment.

13. BNY conducted business at 301 Bellevue Parkway, Wilmington, DE, where it employed Orechovesky.

14. At all relevant times, Defendant was Orechovesky's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

15. Orechovesky was employed by BNY from approximately February 6, 2023, to January 18, 2024, most recently in the position of Senior Vice President, Engineering Process and Policy.

16. Throughout her employment, Orechovesky performed her duties diligently and professionally, receiving a promotion from Vice President to Senior Vice President in or around May 2023.

17. Despite the promotion and a significant increase in her duties and responsibilities, including assuming a workload comparable to higher-paid, Director-level employees, BNY did not provide Orechovesky with any corresponding increase in her salary or other compensation.

18. Upon information and belief, throughout her employment as a Senior Vice

President, Orechovesky was paid a base salary of approximately $170,000 per year, while male colleagues at the same Senior Vice President level, including Thomas Masella and Robert Ziomek, were paid significantly more, earning approximately $190,000 per year.

19. This disparity existed despite Orechovesky possessing equal or greater experience and education and producing a higher volume of work than these male comparators.

20. Specifically, Orechovesky's role required her to manage the same or a greater number of complex cybersecurity policy domains and assume responsibilities for overdue projects originally assigned to her male comparators.

21. In or around April 2023, Orechovesky's male colleague, Thomas Masella, began subjecting her to a pattern of unwelcome and sexually charged conduct.

22. This conduct included, repeatedly and without consent, grabbing and touching her arm; deliberately standing and walking in close proximity to brush against her; and breathing heavily on her neck and face.

23. On or about May 4, 2023, Orechovesky complained directly to Masella about his unwelcome physical touching and demanded that he stop.

24. On or about the same day, Orechovesky also reported Masella's harassment to her direct supervisor, Jacqueline Doyle, who was the Head of Policy Management.

25. Upon information and belief, at least one other female employee of BNY complained to Jacqueline Doyle that Mr. Masella had subjected her to harassment and unwanted sexual advances.

26. Despite multiple complaints to Jacqueline Doyle, BNY failed to take prompt or effective remedial action, forcing Orechovesky to continue working and traveling with her harasser for nearly two months until Human Resources finally met with her on or about June 29,

2023.

27. Upon information and belief, Ms. Doyle's failure to take appropriate remedial action was motivated, in part, by her own prior inappropriate relationship with Mr. Masella.

28. Upon information and belief, Mr. Masella and Ms. Doyle had previously been the subject of a formal complaint to BNY by another Head-level employee concerning their inappropriate relationship, putting BNY on notice of Mr. Masella's propensity for misconduct and Ms. Doyle's compromised ability to supervise him.

29. During this period, and even after Orechovesky complained about his harassment, Doyle required Orechovesky to drive Masella to and from work events, exacerbating the hostile environment.

30. This failure to act created a sexually hostile work environment that would dissuade a reasonable employee from reporting harassment.

31. In her capacity as a manager of engineering policy, Orechovesky's duties included identifying and reporting on deficiencies in Defendant's internal policies and controls.

32. On or about October 31, 2023, Orechovesky reported to her supervisor, Jacqueline Doyle, that Defendant had significant failures in its access control policies, which resulted in terminated and transferred employees retaining access to sensitive company systems.

33. Orechovesky reasonably believed these failures were creating risks of fraud and data breaches in potential violation of federal laws, rules, and regulations, including but not limited to the Sarbanes-Oxley Act (concerning internal controls over financial reporting) and Gramm-Leach-Bliley Act (concerning the safeguarding of customer information).

34. In direct retaliation for her protected whistleblower report, on or about November 2, 2023—just two days later—BNY, through Doyle, presented Orechovesky with an ultimatum

to either resign or be placed on a Performance Improvement Plan ("PIP").

35. This meeting was conducted without the presence of Human Resources and without providing Orechovesky with any supporting documentation, in violation of Defendant's own written policies for implementing a PIP.

36. The PIP Defendant subsequently issued to Orechovesky was pretextual and punitive, assigning her responsibility for policy documents that were years overdue due to the inaction of her male peers, including Thomas Masella and Calian Huang, who were not similarly disciplined.

37. From approximately January 2, 2024, to January 17, 2024, Orechovesky was on medical leave.

38. On or about January 7, 2024, while on leave, Orechovesky engaged in further protected activity by filing a Charge of Discrimination against Defendant with the EEOC.

39. On January 18, 2024, her first day returning to work from her leave, Orechovesky engaged in further protected whistleblower activity by reporting to Doyle that a recently terminated Director, Anand Satchit, still had access to Defendant's internal systems and had contacted her via Microsoft Teams that same day.

40. Orechovesky's report factually validated the serious nature of the access control failures she had reported in October 2023.

41. Immediately after Orechovesky made this protected report, and in direct retaliation for the totality of her protected activities, Defendant terminated Orechovesky's employment.

42. Defendant's stated reason for Orechovesky's termination, poor performance, was a pretext for unlawful retaliation.

43. The true reasons for Orechovesky's termination were her protected reports of internal control failures, her complaints of sexual harassment and unequal pay, and her filing of an EEOC charge.

## FIRST CAUSE OF ACTION
### (Retaliation in Violation of New York Labor Law § 740)

44. Orechovesky repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

45. NYLL § 740 prohibits an employer from taking any retaliatory action against an employee because the employee discloses or threatens to disclose to a supervisor an activity, policy, or practice of the employer that the employee reasonably believes is in violation of law, rule, or regulation.

46. On or about October 31, 2023, and again on January 18, 2024, Orechovesky disclosed to her supervisor practices by BNY that she reasonably believed were in violation of federal laws, rules, or regulations, including the Sarbanes-Oxley Act and the Gramm-Leach-Bliley Act, concerning internal controls over financial reporting and data security.

47. As a direct and proximate result of her protected disclosures, BNY took retaliatory actions against Orechovesky, including but not limited to subjecting her to a baseless and punitive PIP and terminating her employment.

48. BNY's actions have caused Orechovesky to suffer damages, including but not limited to lost wages and benefits, emotional distress, and reputational harm.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, NYSHRL, and NYCHRL)

49. Orechovesky repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

50. Orechovesky engaged in protected activity under Title VII, the NYSHRL, and the NYCHRL when she complained of sexual harassment in May 2023 and when she filed a Charge of Discrimination with the EEOC on January 7, 2024.

51. BNY was aware of Orechovesky's protected activities.

52. BNY subjected Orechovesky to materially adverse employment actions, including but not limited to subjecting her to a retaliatory hostile work environment, placing her on a punitive PIP, and terminating her employment.

53. BNY took these adverse actions against Orechovesky because of her protected activities. But for her complaints of discrimination and her EEOC filing, she would not have been subjected to the PIP or terminated.

54. BNY's actions constitute unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), the NYSHRL, and the NYCHRL.

## THIRD CAUSE OF ACTION
**(Sex Discrimination in Violation of the Equal Pay Act, Title VII, NYSHRL, and NYCHRL)**

55. Orechovesky repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

56. BNY violated the EPA, Title VII, the NYSHRL, and the NYCHRL by paying Orechovesky wages at a rate less than the rate at which it paid wages to similarly situated male colleagues for substantially similar work.

57. Specifically, BNY paid male Senior Vice Presidents, including Thomas Masella and Robert Ziomek, higher salaries than Orechovesky for performing substantially equal work that required equal skill, effort, and responsibility, and which was performed under similar working conditions.

58. BNY further discriminated against Orechovesky on the basis of her sex in

violation of Title VII, the NYSHRL, and the NYCHRL by promoting her to Senior Vice President without an increase in compensation, while requiring her to perform a Director-level workload.

59. The pay disparities were not justified by a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or any factor other than sex.

## FOURTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII, NYSHRL, and NYCHRL)

60. Orechovesky repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

61. Beginning in or around April 2023, BNY, through its employee Thomas Masella, subjected Orechovesky to unwelcome harassment because of her sex.

62. This harassment was sufficiently severe and pervasive to alter the conditions of Orechovesky's employment and create an abusive working environment.

63. Under the NYCHRL, Plaintiff was treated less well than other employees because of her gender.

64. BNY knew or should have known of the harassment because Orechovesky reported it to her direct supervisor, Jacqueline Doyle, on or about May 4, 2023.

65. BNY failed to take prompt and effective remedial action. Instead, it forced Orechovesky to continue working and traveling with her harasser, thereby ratifying and exacerbating the hostile work environment.

66. BNY's actions constitute an unlawful hostile work environment in violation of Title VII, the NYSHRL, and the NYCHRL.

**RELIEF**

Plaintiff Tara Orechovesky demands judgment in her favor and against Defendant BNY Administrative Services LLC as follows:

A. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Orechovesky for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B. An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Orechovesky for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

C. An award of punitive damages, in an amount to be determined at trial;

D. An award of liquidated damages pursuant to the EPA;

E. Prejudgment interest on all amounts due;

F. An award of Orechovesky's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

G. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Tara Orechovesky demands a trial by jury on all issues so triable of right.

Dated: October 15, 2025
       New York, New York

**RISSMILLER PLLC**

By: *Alex Rissmiller*

Alex Rissmiller
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com
jliriano@rissmiller.com

*Attorneys for Plaintiff Tara Orechovesky*